R. V. STOECKLE, Appellant, v. GREAT WESTERN CEREAL COMPANY, Appellee.

**Master and servant:** CONTRIUTORY NEGLIGENCE: NOTICE OF DEFECTIVE MACHINERY. A servant who made the last repair upon machinery with which he was at work, and by which he was subsequently injured, is in no position to claim that the repair was not reasonably well done; as such a claim would establish his contributory negligence and defeat recovery for the injury caused by the defect. And if the repair was well done its defective condition on the day following causing injury to the servant did not develop in such time as to charge the master with notice of the defect.

Same: DEFECTIVE MACHINERY: EXPERT EVIDENCE. Where there was no evidence of a bend in a shaft on the day of plaintiff's injury, expert testimony as to the mere tendency of the shaft to bend because of the lack of a bearing, was irrelevant.

Same: NEGLIGENCE: EVIDENCE: *Res ipsa loquitur*. Where, as in this case, the plaintiff repaired a machine, and on the following day was injured by the same machine which had again become defective in the same manner, the rule of *res ipsa loquitur* had no application in determining the master's liability.

In this action the evidence is held insufficient to justify a finding of actionable negligence on the part of the master.

*Appeal from Webster District Court.*—Hon. R. M. Wright, Judge.

Saturday, March 11, 1911.

ACTION at law to recover damages for personal injury. The court directed a verdict for defendant, and from the judgment entered thereon the plaintiff appeals.—*Affirmed.*

*Healy & Healy* and *B. B. Burnquist,* for appellant.

*Hewitt & Wright* and *Kenyon, Kelleher & O'Connor,* for appellee.

WEAVER, J.—The appellee operates a large cereal mill and elevator at Ft. Dodge, Iowa. The appellant is an expert millwright of much experience in mills of this character. He was first employed by the cereal company in the year 1903 in the work of installing its machinery, and served about six months. He appears to have returned to the company's employment at a later period, quitting again in September, 1907. Thereafter, in April, 1908, he once more entered its service as head millwright, and remained therein until his injury as hereinafter described on September 4, 1908. His duties did not require him to inspect the machinery for the purpose of discovering de-

fects, but, if he saw such defects or if they were called to his attention, he was expected to attend to the matter, and make the needed repairs. His usual place of work was in a room or shop set apart for such use, where portable parts or appliances needing his attention were brought to him, or, if the character of the work was such that it could be more conveniently done at the place of install-ment, he did it there. On the first floor of the elevator was a certain cockle separator, through which grain from the upper floors passed in a process of cleaning or separa-tion. Motion was imparted to this machine by means of a' horizontal shaft revolving in bearings or arms attached to upright posts about five feet from the floor. The shaft was of steel a little more than five feet in length, and some two or two and one-half inches in diameter. At a point opposite the separator the shaft was encircled by an eccen-tric from which an arm or bar of iron extended to the separator and was upheld at the other end by a socket in a block attached to the box containing the sieves. The bar was held in the socket by pressure from springs at the op-posite end of the box which was itself so suspended as to be capable of a horizontal shaking motion. This motion, as will be readily seen, was accomplished by the operation of the eccentric bar which at each revolution of the shaft would push the box outward against the springs, the recoil of which would return it, and at the same time prevent the end of the bar from dropping from the socket. If by reason of weakness in the springs or defect in the block or any other reason the eccentric bar should become disengaged from the socket, it would ordinarily hang loose from its sleeve upon the shaft. If sufficiently loose, it would take no motion from the shaft and cause no peril to any one in the vicinity, but, if in any manner it should "bind" or there be any considerable friction, the tendency would be to swing the bar rapidly about the shaft to the injury of any one coming within its striking distance. When this

separator was installed, the shaft which operated it was supported by three bearings such as we have before mentioned attached to as many upright posts. . Some time in the year 1907 the middle bearing was for some purpose removed, and was not replaced, but the use and operation of the separator was continued. On September 4, 1908, the plaintiff being notified that another machine in the immediate vicinity of the one in question was needing repair, he went to thàt floor, and, as he was passing near the shaft which · we have described, he was struck, upon the head by the eccentric bar which had become disengaged from its socket and was whirling about the shaft. To recover for damages so sustained this action was brought.

The petition alleges that the detachment of the eccentric bar and plaintiff's injury therefrom was caused by the defendant's negligence in permitting the shaft to become bent or twisted or warped; in failing to warn plaintiff of said condition; in permitting the machine to be used without sufficient and proper bearings for the shaft; in failing to repair the defects of the machine after notice thereof and after promising the plaintiff so to do; in failing to provide plaintiff a reasonably safe place to work; and in failing to properly construct, adjust, and operate the machinery of said separator. The defendant admits plaintiff's injury, denies the allegations of negligence, and pleads assumption of risk. The motion for a directed verdict, which was sustained generally, is grounded on the proposition that the evidence is insufficient to show actionable negligence on the part of the defendant, and that plaintiff had assumed the risk of such injury and contributed thereto by his own negligence.

In addition to the matters of fact above stated and concerning which there is no material dispute except as to the charges of negligence, there was evidence tending to show that on August 25, 1908, plaintiff, having occasion to visit the floor where the separator was located, noticed

the absence of the middle bearing, and, reporting it to the manager, asked that a new one be ordered from the factory or supply house in another state. To procure it would require about two weeks. The manager directed him to make inquiry for the old bearing, saying that, if it was not found, he would make the order as requested. The search having failed to develop the missing part, plaintiff renewed his request to the manager, who bowed as if in acquiescence, and plaintiff returned to his work. During the night of September 2, 1908, the block containing the socket in which the eccentric bar of this separator operated became loosened and detached, allowing the bar to fall and hang motionless on the shaft. This condition was discovered by a workman, who replaced the block and fastened it in place with screws. The following morning, September 3d, the block again came off, the machine was shut down, and plaintiff called to make the repair. He put the block back in position, and says he bolted it there, though the evidence as a whole seems to indicate that he fastened it with screws only. On the following day he was injured as above noted. When other workmen came to his assistance and stopped the machine, it was found that the block had again become separated or torn loose from the box, and that a piece had been broken from the tip of the eccentric bar. The machine was again repaired by some one and continued to be operated by the same shaft for a considerable period, when, about forty days after the accident, the shaft was removed, and, being examined or tested, it is claimed was found to be out of alignment, being bent or warped to the extent of three-sixteenths of an inch.

If upon the record thus made there be no showing of actionable negligence on the defendant's part, we shall have no occasion to consider other issues raised or discuss other questions which have been given prominence in the briefs of counsel. So far as the original construction and ordinary operation of the machine is concerned, no expert or any

other witness undertakes to say there was any substantial defect. The issue is made in the pleadings and perhaps relied upon in argument that the arrangement by which the end of the eccentric was entered into a socket on the sieve box without any lock or fastening to hold it in place was a negligent device, but there is no evidence which supports the allegation. Indeed, it is apparent even to the nonexpert that the device by which the return motion is made to depend upon the recoil of springs at the outer end of the box must be preferable to one dependent upon the jerk and pull of the eccentric bar locked or fastened to the nearer end, repeated at the rate of more than four hundred times per minute. With the springs kept properly adjusted and the block carrying the socket securely attached to the box, and the shaft kept within its bearings it is very difficult to understand how the eccentric bar could become disconnected. Passing for the present the question of any defect in the shaft, there is no suggestion that the springs giving the backward motion were out of order, and, as they were made adjustable by set screws, they could have contributed to this accident only by the neglect and failure of the person in charge to give proper attention to the adjustment, and in such case the negligence would be that of a fellow servant and would give rise to no cause of action on the part of the plaintiff.

Coming next to the block containing the socket, it will be recalled that on the night of September 2d it became loosened, allowing the eccentric bar to drop. Being repaired

1. MASTER AND SERVANT: contributory negligence: notice of defective machinery.

in some measure by an attendant, the same condition developed again on the following morning, when plaintiff himself repaired it, and it was still again found detached on September 4th, after plaintiff was injured. If the liability of defendant could be made to depend upon the defective condition of the block or method of its fastening, it might well be said that the evidence makes a case for the jury,

but clearly liability can not be so predicated.   In the first place, the last repair was made by the plaintiff himself, and he can not say the work was not reasonably well done without convicting himself of contributory negligence.   On the other hand, if the repair was well done, its subsequent defective condition did not develop in such time as to charge defendant with notice.

It follows, we think, that, unless there is evidence from which the jury could find that the dropping of the eccentric bar from its socket was caused by some negligence of the defendant with respect to the shaft, the plaintiff must be held to have failed upon the first essential proposition of his case.   Recognizing the truth of this suggestion, counsel argue with much force and persistence that the result of the operation of the shaft without the middle bearing originally provided had the effect to bend it out of alignment; that the effect of this condition was not only to detach the eccentric bar from its socket, but to make it bind or stick upon the shaft and to revolve with it, and thus inflict the injury complained of.   In our judgment the force of this suggestion is neutralized by the lack of evidence to show that the shaft was in fact bent or crooked at the time of the injury.   True, forty days later it is said to have been found to be out of alignment.   But who shall undertake on this slender foundation to say how long that condition had existed?   If plaintiff were a railway brakeman alleging that his injury was caused by a broken drawbar, and on trial the only evidence of the defect was testimony that after forty days' use subsequent to the injury the drawbar had been examined and found to be broken, it would hardly be contended that the connection in point of time was sufficiently close to sustain the allegation.   No evidence was offered to rebut the possibility that the bend in the shaft might have had its origin after the injury or had been produced in some way at the very time of said injury.   Evidence was offered

*2. SAME: defective machinery: expert evidence.*

and ruled out that in the use of the shaft without the middle bearing there would be a tendency to spring or bend it out of alignment. This evidence might well have been admitted, and had any witness testified to the fact of such condition of the shaft at the time of the accident expert testimony, as to the natural or probable effect of the absence of the central bearing, would have afforded material corroboration. In the absence, however, of testimony of any bend or crook in the shaft at the date in question, expert theories as to the mere tendencies resulting from the absence of the bearing would not be relevant or material.

It is also not without pertinence to the question before us to say that plaintiff worked at and about this very shaft on the day before his injury and again but a few minutes before he was hit by the flying bar, but he 3. SAME: negligence: evidence: *res ipsa loquitur*. nowhere suggests that he detected any appearance or motion indicating a want of alignment. As a millwright of very large experience and the expert in charge of the maintenance and repair of the machinery, it would seem hardly possible that any serious irregularity of this kind would have escaped his attention. We may also add that the circumstances of the injury are not of that unusual or extraordinary nature so inconsistent with due care as to call for an application of the rule of *ipsa loquitur.*

In short, taking all the circumstances shown in evidence, and giving them their strongest probative force in favor of the appellant, we think there is nothing upon which the jury could properly find negligence of the defendant from which as a proximate cause the injury to appellant can fairly be traced.

The conclusion thus announced necessitates a finding against appellant upon the other exceptions urged in argument, and the judgment appealed from is *affirmed.*